UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 03-10352-JLT |
| | ) | |
| v. | ) | |
| | ) | |
| LARRY MATTHEWS, | ) | |
|    a/k/a  Jermaine, | ) | |
|    a/k/a  Germaine, | ) | |
|       Defendant | | |

## MOTION IN LIMINE TO PRECLUDE "STATISTICAL IMPROBABILITY" TESTIMONY BY BOSTON POLICE OFFICER MARIO R. LOZANO

Now comes the defendant, LARRY MATTHEWS, and requests this Court preclude the Boston Police Department fingerprint examiner from testifying at trial in the above case that:

> ... identifiable prints are rarely found on recovered firearms, and that there are a number of reasons for this including, among others, the material of which the firearm is made, its contact with other materials or surfaces, how it is handled, and its exposure to the environment. Officer Lozano also is expected to testify that he has examined approximately 500 firearms over the last several years and that he has been able to recover identifiable prints in about 5 percent of these cases.

As grounds of this motion the defendant says:

1. The incident involved in this prosecution is alleged to have occurred on or about August 11, 2003.

2. An apparent gun located within a housing project building hallway *(which the government alleges the defendant wrongfully possessed)* was taken into custody on that day by Officer Tyrone Camper of the Boston Police Ballistics Unit.[1]

3. The firearm with ammunition received by Officer Camper was then examined – on August 29, 2003 – by Boston Police Officer Dennis LeBlanc of the Boston Police Department Latent Print Section who reported that the firearm was *"fumed and dusted no prints found"* (see "A").

4. There were apparently vestiges of latent prints on the firearm as the ATF Special

---

[1] Officer Camper later determined that the item he received was a firearm with ammunition and no issue is made of this fact to which the defendant, by counsel, has stipulated.

Agent Lisa Rudnicki – the sole witness before the United States Grand Jury which returned the indictment in this matter – testified on November 19, 2003 in response to direct inquiry:

> Grand Juror: *Were there prints on the weapon?*
>
> Agent Rudnicki: *The gun was fumed for prints and there was insufficient ridge detail to draw a conclusion.*[2]

5. Officer Lozano (the government's present trial witness on this subject of fingerprints) did not receive or examine these items until on or about February 26, 2004 (see "C").

6. By this time, ridge detail referred to by Agent Rudnicki was gone and *"No Prints . . . (were) . . . Found"* by Officer Lozano.

7. The substitution of Officer Lozano for Officer LeBlanc was apparently made as Officer LeBlanc has been relieved of duty pending conclusion of investigations regarding improprieties in LeBlanc's processing and analysis of fingerprint evidence in other cases.

8. The two Boston Globe articles, one of April 24, 2004 and the other of June 25, 2004 are submitted as "D" and "E" respectively as they provide a description of the circumstances leading to Officer LeBlanc's replacement as a trial witness in this prosecution. The conclusion of Attorney General Thomas Reilly aptly captures the problem presented by Mr. LeBlanc's work on fingerprint cases as:

> *Reilly blamed both "personal and systemic" failures, but when pressed, said that the investigation also failed to come up with a plausible explanation for how the misidentification could have been an innocent error. Reilly declined to say whether he believed Cowans was purposely framed, but said that none of the independent fingerprint experts who reviewed the case including experts from the FBI could conceive of how the two prints could have been mistaken for one another.*
>
> *"It wasn't even close," he said there was no simple mistake."*

9. Seasonably, upon receipt of the information from the attorney for the government regarding the proposed insertion of Officer Lozano in place of Officer LeBlanc,

---

[2] Grand Jury Transcript pp. 10-11 (see "B").

Page 2

counsel for Mr. Matthews forwarded a public records request[3] to the Attorney General of the Commonwealth (cc to AUSA Bower) for information regarding the "LeBlanc matter." A copy of the request and the responses from Attorney General Reilly's designee are annexed as "F."

10. The assertion by the United States in AUSA Bower's letter of August 9, 2004 that:

> *"the Attorney General's office recently concluded its investigation and determined no criminal charges were warranted against LeBlanc"*

contained in AUSA Bower's letter of August 9, 2004 is wide of the mark as related to this prosecution ("G").

11. The issue here is whether it is more likely than not whether Mr. LeBlanc's action or inaction regarding his examination of the firearm for latent fingerprints affected the integrity of the forensic evidence on the items removed from the alcove within 10 Lattimore Court on August 11, 2003 and creates or contributes to creating a reasonable doubt about Mr. Matthews' guilt of the charge of unlawful possession of that firearm and ammunition.

I certify that a true copy of the above document was served upon the attorney of record for each other party by MAIL/HAND on the date stated herein

*[signature]* George F. Gormley / amc

Dated: 8-30-04

Respectfully submitted,
LARRY MATTHEWS,
By his attorney,

*[signature]* George F. Gormley / amc

George F. Gormley
*George F. Gormley, P.C.*
655 Summer Street
Boston, MA 02210
(617) 478-2750
BBO No. 204140

---

[3] For clarity, the exhibits to the public records request are omitted. They are the Boston Globe articles annexed to this motion as "D" & "E".

Page 3